**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000695
27-FEB-2020
07:48 AM**

NO. CAAP-17-0000695

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


EDELMIRA SALAYES ARAIZA, Petitioner-Appellant,
v.
STATE OF HAWAIʻI, Respondent-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(S.P.P. NO. 15-1-0007(1))
(CR. NO. 14-1-0162(1))


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Wadsworth, JJ.)

Petitioner-Appellant Edelmira Salayes Araiza (**Araiza**) appeals from the "Findings of Fact, Conclusions of Law, and Order Denying Petitioner's Petition to Vacate, Set Aside or Correct Illegal Sentence Through a Writ of Habeas Corpus Pursuant to H.R.P.P. Rule 40," (**FOF/COL/Order**) filed on September 6, 2017, in the Circuit Court of the Second Circuit (**Circuit Court**).[1]

This is Araiza's second appeal from the denial of her May 22, 2015 Petition to Vacate, Set Aside or Correct Illegal Sentence Through a Writ of Habeas Corpus Pursuant to H.R.P.P.

_____

[1] The Honorable Rhonda I. L. Loo presided.

Rule 40 (**Petition**). In her first appeal, No. CAAP-15-0000934, we remanded the case for an evidentiary hearing on her ineffective assistance of counsel claim.

In this appeal, Araiza challenges the Circuit Court's Findings of Fact (**FOF**) Nos. 13, 14, 15, 19, 20, 21, 25, 26, 27, and 31 and Conclusions of Law (**COL**) Nos. 9, 11, 12, 13, and 14. Araiza contends that:

(1) the Circuit Court erred in ruling that she received effective assistance of counsel because (a) she was not accurately advised by her trial counsel of the consequences of pleading no contest to an aggravated felony and (b) her trial counsel failed to effectively negotiate to avoid or minimize immigration consequences;

(2) her no contest plea was invalid because the Circuit Court plainly erred in that it did not provide a "true colloquy" given Araiza's language barriers and did not ensure that Araiza fully understood the rights that she was waiving;

(3) her counsel for the evidentiary hearing on her Petition (**Rule 40 counsel**) provided ineffective assistance by (a) failing to call witnesses to impeach her trial counsel's testimony and/or support Araiza's prior consistent statements and (b) failing to cross-examine trial counsel on his duty to effectively negotiate a plea agreement to avoid or minimize immigration consequences; and

(4) the Circuit Court plainly erred by failing to provide her with a certified and/or qualified interpreter for the evidentiary hearing.

We conclude that Araiza's points of error do not have merit and we therefore affirm.

I.    Claim of Ineffective Assistance of Counsel

   A.    Trial Counsel's Advice Regarding Immigration
         Consequences

         Araiza claims her trial counsel was ineffective for
failing to advise her that she was subject to automatic or
mandatory deportation.  Araiza challenges numerous findings by
the Circuit Court as to Araiza's interactions with her trial
counsel and what he advised her regarding the immigration
consequences of pleading no contest.  Ultimately, the Circuit
Court found that the testimony of trial counsel and his
declaration admitted as Exhibit "1" to the evidentiary hearing
were credible, that Araiza's claim that trial counsel did not
give her any legal advice regarding immigration consequences was
not credible, and that trial counsel had advised Araiza before
her no-contest plea that a no-contest plea or guilty conviction
would result in "an almost certain deportation" and that any
resolution of the case other than a dismissal or acquittal would
result in "an almost certain deportation".

         "A trial court's [findings of fact] are reviewed under
the clearly erroneous standard.  A finding of fact is clearly
erroneous when, despite evidence to support the finding, the
appellate court is left with the definite and firm conviction in
reviewing the entire evidence that a mistake has been committed."
Dan v. State, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994)
(citations and internal quotation marks omitted).

         Here, there is evidence in the record to support the
Circuit Court's findings that are challenged by Araiza, and based
on our review of the record, we are not left with a definite and
firm conviction that the Circuit Court made mistakes in the
findings of fact that are challenged.  To the extent that Araiza
challenges the Circuit Court's findings regarding credibility,
"it is within the province of the trial court to determine the
credibility of a witness[.]"  Matter of Ishida-Waiakamilo Legacy
Trust, 140 Hawai'i 69, 74, 398 P.3d 658, 663 (2017) (citation and

internal quotation marks omitted); see also State v. Jenkins, 93 Hawaiʻi 87, 101, 997 P.2d 13, 27 (2000).

The Circuit Court thus found, and it was not clearly erroneous, that trial counsel informed Araiza that if she pleaded no-contest her deportation was "almost certain." Araiza argues that even if this finding is upheld, her trial counsel's advice was deficient and constituted ineffective assistance of counsel. We disagree.

In Padilla v. Kentucky, 559 U.S. 356, 360 (2010), the Supreme Court held constitutionally competent counsel would have advised a defendant that his conviction for drug distribution made him subject to automatic deportation. The Padilla court stated: "[W]hen the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." Id. at 369. The court in Padilla ended by stating: "[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation." Id. at 374.

In the years since Padilla, the Supreme Court has not consistently characterized the immigration consequence of an aggravated felony conviction. See, e.g., Sessions v. Dimaya, – U.S. – , 138 S. Ct. 1204, 1211 (2018) (noting that "removal is a virtual certainty for an alien found to have an aggravated felony conviction"); Lee v. United States, – U.S. –, 137 S. Ct. 1958, 1963 (2017) (noting that "noncitizen convicted of [an aggravated felony] is subject to mandatory deportation"); Torres v. Lynch, – U.S. –, 136 S. Ct. 1619, 1629 (2016) (aggravated felony includes crime of violence which triggers automatic removal); Chaidez v. United States, 568 U.S. 342, 352 (2013) (stating that "immigration statutes make [deportation] 'nearly an automatic result' of some convictions" (citation omitted)). The Supreme Court has not made it clear whether the immigration consequence for an aggravated felony conviction is absolute or qualified.

4

The statutory language authorizing deportation or removal of an alien who is convicted of an aggravated felony also does not support Araiza's argument. The relevant statutory language does not state that deportation is automatic, mandatory, or certain. Rather, the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2018), entitled "Deportable aliens", states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." (Emphasis added). In turn, 8 U.S.C. § 1228(c) (2018), entitled "Expedited removal of aliens convicted of committing aggravated felonies" provides: "An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States." (Emphasis added).

There are also administrative proceedings and limited judicial review available to defendants convicted of an aggravated felony making deportation or removal less than automatic. "An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1) (2018). An order of deportation shall become final upon the earlier of a determination by the Board of Immigration Appeals affirming the order or the expiration of the time period which permits review of such order. 8 U.S.C. § 1101(a)(47)(B) (2018). While "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)," 8 U.S.C. § 1252(a)(2)(C) (2018), judicial review by the United States Circuit Court of Appeals is not limited or eliminated if based on constitutional claims or questions of law raised in a petition. 8 U.S.C. § 1252(a)(2)(D) (2018). In addition, the federal appellate courts retain jurisdiction to review a Board of Immigration Appeals' determination whether a defendant was convicted of an aggravated felony. Ming Lam Sui v. I.N.S., 250 F.3d 105, 110 (2d Cir. 2001). Thus, even when removal proceedings are initiated, the result is not always automatic

5

deportation.  See id. at 119-20 (removal order vacated where appeals court found defendant did not commit aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i) because defendant's actions did not result in loss to victims exceeding $10,000).

With respect to the use of specific words such as automatic, mandatory, or certain, "Padilla does not require that counsel use specific words to communicate to a defendant the consequences of entering a . . . plea.  Rather, it requires that counsel correctly advise his client of the risk of deportation so that the plea is knowing and voluntary."  Chacon v. State, 409 S.W.3d 529, 537 (Mo. Ct. App. 2013) (emphasis omitted); see also Budziszewski v. Comm'r of Corr., 142 A.3d 243, 249 (Conn. 2016) ("Padilla did not prescribe any fixed words or phrases that counsel must use when advising the client of immigration consequences[.]" (citation omitted)).

Numerous courts have found use of qualifying language to advise a client of the immigration consequences satisfies Padilla.  See, e.g., United States v. Bonilla, 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." (citation and emphasis omitted)); Encarnacion v. State, 763 S.E.2d 463, 466 (Ga. 2014) ("It is not enough to say 'maybe' when the correct advice is 'almost certainly will[,]'" when the law is clear that deportation is mandatory and statutory relief is unavailable (citations omitted)); State v. Sanmartin Prado, 141 A.3d 99, 127 (Md. 2016) (Padilla did not require counsel to use magic words such as absolute, certain, or inevitable deportation when advising of the risk of deportation); Commonwealth v. DeJesus, 9 N.E.3d 789, 795 (Mass. 2014) (counsel required to advise defendant subject to presumptively mandatory deportation that if federal authorities apprehend the defendant, deportation would be practically inevitable); Chacon, 409 S.W.3d at 537 (advice defendant "would very likely be deported and wouldn't be able to

come back" satisfied <u>Padilla</u> requirement (internal quotation marks omitted)); <u>Vega-Reynoso v. State</u>, No. 62369, 2013 WL 3257142, at *1 (Nev. June 12, 2013) (rejecting claim plea was not entered knowingly and intelligently because defendant was not informed that his plea to aggravated felony subjected him to mandatory deportation when counsel advised conviction "will likely have adverse effects" and "would likely result in deportation"); <u>Ex Parte Torres</u>, 483 S.W.3d 35, 45-46 (Tex. Crim. App. 2016) (counsel was required to inform defendant deportation was a "virtual legal certainty" when guilty plea subjected him to automatic deportation); <u>State v. Shata</u>, 868 N.W.2d 93, 114 (Wis. 2015).

Trial counsel was not ineffective when he provided Araiza with correct advice, informing her that deportation was "almost certain" if she pleaded no contest. Thus, trial counsel satisfied the requirement under <u>Padilla</u> that Araiza be properly advised of the risk of deportation.

**B. Trial Counsel's Negotiation of Plea Agreement**

Araiza claims her trial counsel was ineffective for failing to effectively negotiate to avoid or minimize the immigration consequences resulting from her plea agreement. Araiza points to trial counsel's lack of testimony at the evidentiary hearing regarding what actions he took to reduce the charge to a lesser degree of theft. Araiza points to trial counsel's testimony, "And I tried many things to try to negotiate down, investigate defenses which I won't go into[,]" to support her claim trial counsel refused to disclose his actions.

"The burden of establishing ineffective assistance rests with the petitioner and can only be met by demonstrating [that] specific errors or omissions resulted in the withdrawal or substantial impairment of a meritorious defense." <u>Dan v. State</u>, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (citation omitted).

7

Araiza did not assert in the Petition or during the evidentiary hearing that trial counsel was ineffective for failing to effectively negotiate a plea agreement. Araiza failed to point to where in the record the alleged error was objected to. Therefore, this point of error was waived and can be disregarded. Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).

Even if the point of error is not disregarded, Araiza failed to satisfy her burden to prove trial counsel was ineffective. Simply pointing to a lack of testimony in the evidentiary hearing does not establish error because the State does not bear the burden of proof. Trial counsel was not asked to explain the actions he took to negotiate a plea, thus, he did not refuse to explain his actions. Taken in context, trial counsel attempted to explain that Araiza became emotional each time he raised the issue of deportation, not when he raised the prospect of incarceration. It appears trial counsel stated he "won't go into" the many things he did to negotiate down the charges because it was not responsive to the issue of why Araiza was emotional. Trial counsel was not directly questioned regarding the specific actions he took to negotiate a plea. Thus, he did not refuse to explain the actions undertaken to negotiate a plea agreement.

The record from the evidentiary hearing demonstrates trial counsel explained the actions he took to negotiate a plea. Trial counsel attested in his declaration, which was entered into evidence as State's Exhibit 1 and found to be credible by the Circuit Court, that if full repayment related to the theft/welfare fraud charges could be made, he would propose to the prosecution the possibility of mitigating or dismissing the charges. Trial counsel stated a pretrial conference was rescheduled to allow Araiza and her husband to come up with some money as restitution to propose settling the case. The plea agreement accepted by Araiza stated "Pursuant to Rule 11 of the Hawaii Rules of Penal Procedure, this is to advise you of the

fact that the State of Hawaii hereby tenders the following _further revised_ plea offer in the above-referenced matter: . . . ." (emphasis in original). Thus, the accepted plea agreement was not the first or only one tendered. Araiza did not show that trial counsel was ineffective in failing to negotiate a plea agreement.

Araiza apparently contends that trial counsel was ineffective for failing to negotiate a plea agreement that actually avoided or minimized immigration consequences for Araiza. However, "there is no constitutional right to plea bargain[.]" _Weatherford v. Bursey_, 429 U.S. 545, 561 (1977). There is no evidence in the record the State agreed to dismiss or reduce the theft charge so as not to be considered a conviction for an aggravated felony under 8 U.S.C. § 1101(a)(43) (2018).

**II. Colloquy in Entering No Contest Plea**

Prior to the instant appeal, Araiza did not raise any issue regarding the Circuit Court's colloquy during her change of plea hearing. Araiza did not appeal from her conviction after her no contest plea, and her Petition does not assert any challenge to the change of plea colloquy. Her Petition expressly states: "[Araiza] does not challenge the Rule 11 colloquy between [Araiza] and the Court." Thus, our decision in Araiza's first appeal only addressed her contention that trial counsel was ineffective for failing to advise her of the immigration consequences of her no contest plea. _Salayes-Araiza v. State_, No. CAAP-15-0000934, 2016 WL 6948461 (Hawaiʻi App. Dec. 29, 2016) (Memo Op.).

Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 40(a)(3) (2006) provides:

> INAPPLICABILITY. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated

> under this rule, and the petitioner is unable to prove
> the existence of extraordinary circumstances to
> justify the petitioner's failure to raise the issue. There
> is a rebuttable presumption that a failure to appeal a
> ruling or to raise an issue is a knowing and
> understanding failure.

(Emphasis added). Given Araiza's express statement in her Petition that she is not challenging the Rule 11 colloquy, the rebuttable presumption that Araiza's failure to appeal her conviction or to raise the colloquy issue in her Petition was a knowing and understanding failure, and because she makes no argument that extraordinary circumstances exist that justify her failure to previously raise the issue, we conclude that the issue is waived.

We further note that, even in her opening brief in this appeal, Araiza asserts: "While admittedly, this colloquy would have been sufficient for an English-speaking defendant to enter a knowing, intelligent and voluntary plea, it failed to ensure that [Araiza], a non-citizen whose first language is Spanish, fully understood all of the rights that she was purportedly waiving." Thus, Araiza's only contention related to the colloquy is her contention that a language barrier was a "salient fact" that gave notice to the Circuit Court that Araiza's waiver of her rights might be less than knowing and intelligent. Araiza relies on State v. Gomez-Lobato, 130 Hawai'i 465, 312 P.3d 897 (2013), and more recent decisions from this court for the proposition that the Circuit Court did not engage in a "true colloquy" with Araiza, especially given her language barriers.

Even if we address her contention in this appeal, Araiza's argument lacks merit. The validity of a criminal defendant's waiver of the right to a jury trial is a question of constitutional law, which is reviewed under the right/wrong standard. State v. Friedman, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000). "[W]hether a waiver was voluntarily and intelligently undertaken, this court will look to the totality of

facts and circumstances of each particular case." Id. at 68-69, 996 P.2d at 273-74 (internal quotation marks omitted) (quoting State v. Vares, 71 Haw. 617, 621, 801 P.2d 555, 557-58 (1990)).

As noted, Araiza claims the colloquy was deficient because her first language is Spanish and her responses consisted solely of one-word responses. Citing Gomez-Lobato, Araiza argues the Circuit Court should have asked additional questions to ensure Araiza understood the right she was waiving because a language barrier was a salient fact that her waiver might be less than knowing and intelligent.

Throughout the change of plea hearing, Araiza had an interpreter. Prior to accepting Araiza's no contest plea, the Circuit Court inquired about her education and background. Araiza stated she had a high school education and she was employed at Foodland in the ham and cheese department. Araiza responded affirmatively when asked whether her attorney explained the charges against her, whether she understood the charges against her, whether she understood the maximum penalty was 11 years incarceration and a $22,000 fine, that she had the right to a speedy and public trial by a jury, that by pleading no contest she was giving up the right to a trial, that she had a right to a trial no matter how strong the evidence was against her, the State must prove guilt beyond a reasonable doubt at trial, her lawyer could cross-examine witnesses at trial, she had the right to testify or not testify at trial, she could call and present her own witnesses at trial, by pleading no contest she was giving up all of the aforementioned rights, that there would be no trial, the court would find her guilty and sentence her without a trial, she was giving up her right to appeal, she could not change her mind if she did not like her sentence, she could maintain her not guilty plea and have a trial on the charges, the plea was not binding on the court, the court made no promises, and she completely understood the proceeding. Araiza responded in the negative when asked whether she was under the influence of alcohol, drugs, or medication of any kind, whether she was under

11

treatment for any kind of mental illness or emotional disability, if she was pleading no contest because someone was forcing or threatening her, if anyone was pressuring her, whether there was any other promises made in return for a no contest plea, and whether she wanted any part of the proceeding explained. Further, in response to the Circuit Court's question, "[k]nowing the penalties you face, do you still wish to plea no contest?", Araiza responded "I'm not going to fight the charges." When the Circuit Court then asked "Okay. But knowing the penalties you face, do you still wish to plea no contest?", Araiza responded "Yes".

Araiza does not claim she did not understand any specific aspect of the rights that she waived, merely that she responded "yes" or "no" to many of the questions during the colloquy. Even though Araiza's primary language is Spanish, under the totality of the circumstances and given that Araiza had an interpreter throughout the change of plea hearing, she has not shown that her no contest plea was not made knowingly, intelligently, and voluntarily.

**III. Claim That Rule 40 Counsel Was Ineffective**

Rule 40 counsel was not ineffective for failing to call witnesses who Araiza asserts "could have provided impeachment evidence and testimony against [trial counsel], as well as prior consistent hearsay testimony in support of Petitioner." Araiza claims her Rule 40 counsel was ineffective for not presenting testimony at the evidentiary hearing of her initial counsel who filed the Petition, Gary Singh (**Singh**), and the interpreter who participated in Araiza's meetings with trial counsel.

Araiza cites paragraph 1 of her prior counsel's declaration which states:

> 1.   I spoke with Petitioner's [trial] counsel, . . . and he told me that he was not aware and did not advise Petitioner herein that theft over $10,000 constituted aggravated felony under the immigration code. He also stated that he was not aware that removal was certain and therefore did not explain this to Petitioner. If an evidentiary hearing is held, I will subpoena

12

> [trial counsel's] appearance, and I believe that
> he will testify to the same.

However, trial counsel admitted during his testimony that he did not use the terms "aggravated felony" or "with no possible relief." He used "almost certain deportation." Trial counsel explained he could not advise Araiza that she was subject to automatic deportation because he does not control federal authorities charged with handling immigration and some convicted non-citizen immigrants were not automatically deported. He advised Araiza that a defendant might slip through the grasp of what would otherwise be an automatic deportation. Trial counsel agreed with the statements in paragraph 1. Thus, additional witness testimony by Mr. Singh would not have contradicted trial counsel's testimony.

Thus, Araiza has failed to demonstrate that a potentially meritorious defense was withdrawn or substantially impaired due to Rule 40 counsel not calling Singh as a witness at the evidentiary hearing.

In addition, with respect to Araiza's claim that Rule 40 counsel was ineffective for failing to call the interpreter as a witness, "claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998). Araiza did not provide an affidavit or sworn statement by the interpreter describing any testimony that the interpreter would provide. Given the lack of such affidavit, it is reasonable that it may have been a strategic decision by Rule 40 counsel not to call the interpreter as a witness.

Furthermore, Rule 40 counsel was not ineffective for failing to cross-examine trial counsel regarding his duty to effectively negotiate to avoid or minimize immigration consequences. Araiza did not allege in the Petition that trial counsel was ineffective for failing to effectively negotiate a plea agreement or advance such an argument during the evidentiary

13

hearing. Thus, Araiza has not pointed to where in the record the error was brought to the attention of the Circuit Court. This point of error is waived and will be disregarded. HRAP Rule 28(b)(4).

Even if the point of error is not disregarded, as explained above, trial counsel stated in his declaration what actions he took to negotiate a plea agreement. On appeal, Araiza does not allege trial counsel failed to undertake any specific action to negotiate a plea agreement. Thus, Araiza did not demonstrate specific errors or omissions by Rule 40 counsel that resulted in the withdrawal or substantial impairment of a meritorious defense. See Dan, 76 Hawai'i at 427, 879 P.2d at 532.

## IV. No Plain Error Based on Interpreter at Evidentiary Hearing

Araiza claims the Circuit Court plainly erred by utilizing an interpreter at the evidentiary hearing who was not certified by the State of Hawai'i, Judiciary, Office of Equality and Access to the Courts and/or who was not properly qualified on the record. She asserts that the interpreter for the evidentiary hearing was not on the list of certified Spanish language interpreters, citing to a judiciary website listing certified interpreters. Araiza further asserts the record fails to establish the interpreter's qualifications under the Hawaii Rules of Evidence (**HRE**).

Araiza did not raise any challenge to the interpreter during the evidentiary hearing. Thus, we review her assertions on appeal for plain error.

> The appellate court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights. An appellate court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

State v. Metcalfe, 129 Hawai'i 206, 222, 297 P.3d 1062, 1078 (2013) (citations and quotation marks omitted).

14

In addressing the competence of an interpreter, this court has held that "[t]here is a rebuttable presumption that an interpreter in the course of performing his official duty has acted regularly." State v. Casipe, 5 Haw. App. 210, 214, 686 P.2d 28, 33 (1984) (citation omitted).

> Where the incompetence of the interpreter is claimed by a defendant to have deprived him of a fair trial, the crucial question is: Was the testimony as presented through the interpreter understandable, comprehensible, and intelligible, and if not, whether such deficiency resulted in the denial of the defendant's constitutional rights? If so, the conviction must be reversed.

Id. (citations omitted).

Rule 14.1 of the Hawai'i Rules for Certification of Spoken and Sign Language Interpreters states:

> 14.1 Court interpreters shall be appointed in accordance with the rules of court. When making an appointment, a court should give preference to court interpreters within that circuit who have been qualified under these Rules for Certification of Spoken and Sign Language Interpreters in Hawai'i State Courts. A court interpreter who has been qualified under these rules shall be paid in accordance with the interpreter's designation. *See* Appendix A.

HRPP Rule 28(b) (2012) states: "The court may appoint an interpreter of its own selection and may fix the reasonable compensation of such interpreter. Such compensation shall be paid out of such funds as may be provided by law."

We first note that Araiza has not established that the interpreter was not certified. The website to which Araiza cites does not appear to contain the list of certified interpreters in June 2017, when the evidentiary hearing was held. The record does not reflect whether the interpreter was certified.

Moreover, there is only a preference, not a requirement, to appoint a court interpreter certified under the Hawai'i Rules for Certification of Spoken and Sign Language

15

Interpreters. The Circuit Court had discretion to appoint an interpreter of its selection and the appointment did not violate the Hawai'i Rules for Certification of Spoken and Sign Language Interpreters or HRPP Rule 28.

Araiza claims that pursuant to HRE Rule 604, the interpreter should have been qualified as an expert. HRE Rule 604 (2016) states: "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that the interpreter will make a true translation."

Here, the record reflects that an oath was administered to the interpreter at the start of the evidentiary hearing. Further, the following discussion ensued:

> THE COURT: Okay. Before we start, the witness exclusionary rule is in effect, so if there's any witnesses present, you need to step outside. Any other housekeeping matters? Mr. Protti, everything we say are you translating?
>
> THE INTERPRETER: Yeah.
>
> THE COURT: Okay. Let us know if we're talking too fast.
>
> THE INTERPRETER: Okay.
>
> THE COURT: Anything she says you need to --
>
> THE INTERPRETER: Yeah, she needs a complete translation. I was asking her if she understands. Barely.
>
> THE COURT: Okay. Everything she says you need to translate for us.
>
> THE INTERPRETER: Yes, I will.
>
> THE COURT: Okay? All right. Any other housekeeping matters?

Although not extensive, this discussion shows that the Circuit Court instructed the interpreter to translate everything that was said. See United States v. Pluta, 176 F.3d 43, 51-52 (2d Cir. 1999). Moreover, with regard to an interpreter serving as an expert, the Circuit Court was not required to make an express finding that the interpreter was qualified as an expert. See Metcalfe, 129 Hawai'i at 225, 297 P.3d at 1081 (stating that "the

plain language of HRE Rule 702 does not require the circuit court to formally qualify a witness as an expert before receiving the witness's testimony into evidence").

At no point during the evidentiary hearing did Araiza raise any concern about the interpreter, and on appeal she does not claim the interpreter failed to interpret in a manner that was understandable, comprehensible, or intelligible. Given the record, Araiza has not rebutted the presumption that the interpreter "acted regularly" in performing his duties. Casipe, 5 Haw. App. at 214, 686 P.2d at 33.

The Circuit Court did not plainly err in appointing the interpreter and Araiza was not deprived of a fair hearing.

**V. Conclusion**

Based on the foregoing, the "Findings of Fact, Conclusions of Law, and Order Denying Petitioner's Petition to Vacate, Set Aside or Correct Illegal Sentence Through a Writ of Habeas Corpus Pursuant to H.R.P.P. Rule 40," filed on September 6, 2017, in the Circuit Court of the Second Circuit, is affirmed.

DATED: Honolulu, Hawai'i, February 27, 2020.

On the briefs:

Hayden Aluli,
for Petitioner-Appellant.

Peter A. Hanano,
Deputy Prosecuting Attorney,
for Respondent-Appellee.

Chief Judge

Associate Judge

Association Judge